UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MORGAN F., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:18-cv-01402-TWP-TAB |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Morgan F.[1] requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "SSA"), denying her application for Supplemental Security Income ("SSI") under the Social Security Act. For the following reasons, the Court **remands** the decision of the Acting Commissioner.

### I. PROCEDURAL BACKGROUND

On August 26, 2014, Morgan F. filed an application for SSI, alleging a disability onset date of January 1, 2007. (Filing No. 7-2 at 11.) Her application was initially denied on November 13, 2014, (Filing No. 7-4 at 4), and upon reconsideration on February 26, 2015, (Filing No. 7-4 at 10). Administrative Law Judge Roy E. LaRoche, Jr. (the "ALJ") conducted a hearing on February 24, 2017, at which Morgan F., represented by counsel, and a vocational expert ("VE") appeared and testified. (Filing No. 7-2 at 38-60.) The ALJ issued a decision on April 19, 2017, concluding that Morgan F. was not entitled to receive SSI. (Filing No. 7-2 at 8.) The Appeals Council denied

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

review on March 9, 2018.  (Filing No. 7-2 at 2.)  On May 7, 2018, Morgan F. timely filed this civil action, asking the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final decision of the Acting Commissioner denying her benefits.  (Filing No. 1.)

## II.     STANDARD OF REVIEW

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Acting Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  At step three, the Acting Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Acting Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id*. (citation omitted).

### III. FACTUAL BACKGROUND

Morgan F. was 19 years of age at the time she applied for benefits. (Filing No. 7-5 at 2.) She alleged that she could no longer work due to bipolar disorder, personality disorder, attention deficit hyperactivity disorder, anxiety, and depression. (Filing No. 7-6 at 12.) She completed the ninth grade and did not have any work history. (Filing No. 7-6 at 13).[2]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Morgan F. was not disabled. (Filing No. 7-2 at 21.) At step one, the ALJ found that Morgan F. had not engaged in substantial gainful activity since August 26, 2014, the application date.[3] (Filing No. 7-2 at 13.) At step two, the ALJ found that she had the "following severe impairments: asthma, bipolar disorder with psychotic features, attention deficit hyperactivity disorder (ADHD), and generalized anxiety disorder (20 CFR 416.920(c))." (Filing No. 7-2 at 13.) At step three, the ALJ found that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of

---

[2] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

4

the listed impairments. (Filing No. 7-2 at 14.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: no more than occasional exposure to atmospheric conditions (gas, fumes, dust, and respiratory irritants); is limited to simple, routine, and repetitive tasks; in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; with few, if any, workplace changes; occasional contact with supervisors; incidental contact with coworkers; no contact with the public; and would need supervisor checks twice a day.

(Filing No. 7-2 at 16.) At step four, the ALJ concluded that Morgan F. did not have any past relevant work to consider. (Filing No. 7-2 at 20.) At step five, the ALJ found, relying on the testimony of the VE and considering Morgan F.'s age, education, work experience, and RFC, that she was capable of performing other work that existed in significant numbers in the national economy in representative occupations such as a sorter, packer, and machine feeder. (Filing No. 7-2 at 20.)

## IV. DISCUSSION

Morgan F. raises four issues on appeal that the ALJ (1) failed to consider Morgan F.'s individualized response to stress as required by SSR 85-15, (2) ignored a line of evidence concerning her headaches, (3) improperly equated the performance of activities of daily living— including care for her children—with the ability to perform full-time work, and (4) improperly relied on VE testimony that was confusing and convoluted in response to a hypothetical that included a vague limitation that was not adequately explained by the ALJ. Because it is dispositive, the Court begins its analysis with the last issue and addresses the other issues as necessary to resolve the appeal.

**A.   Step Five, Need for Supervisor Checks**

The Court finds that the ALJ's step five determination was not supported by substantial evidence because the ALJ does not explain the RFC limitation's basis in the record. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (finding ALJ's hypothetical limitation conveyed to the VE and later adopted in the RFC finding—that the claimant would need to be off-task up to ten percent of the workday—was not supported by substantial evidence because the ALJ had not explained how he crafted the precise limitation, as opposed to a disabling limitation of needing to be off-task for more than ten percent of the workday); *see also Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (stating the rule that a hypothetical question must be supported by medical evidence in the record).

Here, the ALJ gave great weight to the state agency psychological consultants' assessments of Morgan F.'s mental limitations. ([Filing No. 7-2 at 18](#).) However, the ALJ added additional limitations to Morgan F.'s RFC, which he explained:

> Due to the noted aggressive behavior, however, she requires jobs with only occasional contact with supervisors, incidental contact with coworkers, and no contact with the public. Additionally, due to the claimant's difficulties in maintaining focus, she would also need supervisor checks twice a day.

([Filing No. 7-2 at 19](#).)

While the Court does not agree with Morgan F. that the VE's testimony was confusing or convoluted, the Court does agree that the limitation of needing supervisor checks twice a day is vague, particularly in the context of the VE's full testimony. The ALJ concluded that Morgan F.'s issues with focus were adequately supported by the record enough to require some need for additional supervision. The ALJ ostensibly sought VE testimony to determine the effect of Morgan F.'s issues with focus on meeting the demands of competitive employment, which resulted in the following exchange during the hearing:

6

[Question ("Q") by ALJ:] All right. And if we were to add in that the individual – everything from hypothetical 1 but add in that the individual would need to be reminded of tasks two times a day, would that [INAUDIBLE] those jobs or if not those, any other jobs?

[Answer ("A") by VE:] Reminded by the supervisor what the tasks are?

Q Yes, reminded by the supervisor to be back on task.

A So redirecting?

Q Redirecting.

A That's basically sheltered employment.

Q Okay. If they were working independent like cleaning a room, and the supervisor came back and just said look, remember you have to do that, that would be considered sheltered employment?

A No, if it's just a reminder of something else they needed to do. But if they're on a workstation, and they have to be reminded to stay on task.

Q Okay. All right. How about if a supervisor just has to check on them throughout the workday, like two times a day?

A That would be allowed.

Q It would be allowed?

A Yes.

Q So the jobs that you named would still be here?

A Yes.

Q Is there a maximum number of times a supervisor would check on an employee before then it becomes a sheltered work environment or it wouldn't be allowed?

A Two times a day would be allowed to be checked on. One [sic] it becomes beyond that, if they have to constantly redirect, that would eliminate those jobs, and it would go to sheltered.

([Filing No. 7-2 at 55-57](Filing No. 7-2 at 55-57).) The SSA's "regulation explains that work done in sheltered employment 'may show that you have the necessary skills and ability to work at the substantial gainful activity

level,' but a person capable of working *only* in sheltered employment is deemed disabled and therefore entitled to receive social security disability benefits." *Browning v. Colvin*, 766 F.3d 702, 704 (7th Cir. 2014) (emphasis in original) (quoting 20 C.F.R. § 404.1573(c)).[4]

The ALJ did not find Morgan F. capable of other work akin to cleaning a room where the tasks might be variable and some reminders by supervisors would be tolerated to assure that all necessary tasks were completed. The ALJ found that Morgan F. was capable of other work at step five, including as a packer, sorter, and machine feeder that would be performed at a workstation involving mostly static tasks in a more controlled environment. The VE testified that those type of jobs would not tolerate the need for redirection by a supervisor twice a day to keep the worker on task.

Presumably, the ALJ found that Morgan F. did not require redirection to stay on task but required that a supervisor checked on Morgan F.'s work twice a day. It is difficult to imagine how a supervisor would keep an individual with focus issues on task by checking on his or her work without needing to redirect that worker if he or she was off-task. Perhaps with some workers, the mere knowledge that they were being checked on and scrutinized would be enough to keep them motivated to remain focused on the required work-tasks.

More importantly, the ALJ's written decision does not explain how the ALJ assessed the precise limitation—with the fine distinction of needing supervisor checks without the need for redirection—based on the supporting medical evidence. The ALJ relied on the results of a consultative examination, including the "need for redirection," to support his finding that Morgan F. had moderate limitations with concentration, persistence, or maintaining pace. (*See* Filing No. 7-2 at 15). The consultative examiner's behavioral observations of Morgan F. included:

---

[4] *Browning* quotes a regulation that applies to Title II claims for disability insurance benefits. However, a parallel, verbatim regulation exists for SSI claims, which establishes the same legal point. *See* 20 C.F.R. § 416.973(c).

> She was talkative and was often redirected to the tasks on the *WAIS-IV*. She had low tolerance for frustration and seemed to become somewhat agitated as soon as she realized the questions were becoming increasingly difficult. She voiced her dislike for certain tasks. Nonetheless, she was able to complete all tasks asked of her.

([Filing No. 7-7 at 122](#).) The record does not support that Morgan F. would be able to complete work tasks without some redirection or that she would necessarily be so receptive to scrutiny that her focus issues would be addressed by supervisor checks. If that was the distinction that the ALJ relied upon to find Morgan F. capable of competitive work, the written decision does not allow the Court to trace the ALJ's logic from the evidence to her material conclusion. The ALJ "must establish a logical connection between the evidence and his conclusion." *Lanigan*, 865 F. 3d at 563 (citing *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

The Acting Commissioner's counter-arguments are unavailing that Morgan F. had not established the basis for additional mental limitations in the RFC, ([Filing No. 15 at 13](#)), or has forfeited any challenge to the VE's testimony by not raising an objection during the hearing, ([Filing No. 15 at 18-19](#)). As explained above, the ALJ ostensibly credited the need for a relevant limitation. Even accepting the VE testimony as accurate, the Court is not able to determine how the ALJ found the medical record supported the limitation he relied upon to get to the result—based on the VE's testimony—that Morgan F. was capable of performing the specific work found at step five. Accordingly, remand is required for further consideration of Morgan F.'s mental RFC, as well as her ability to perform other work at step five based on the limitations supported by the record.

**B.      Other Arguments**

The Court declines to provide a detailed analysis of Morgan F.'s remaining arguments. Morgan F.'s first argument that the ALJ failed to consider her individualized response to stress when assessing Morgan F.'s ability to work is rendered moot by the Court's resolution of the issue above. Morgan F.'s second argument that her headaches were completely ignored by the ALJ is significantly undercut by her testimony that she did not have any physical impairments that affected her ability to work, besides asthma. ([Filing No. 7-2 at 45-46](#)). On remand, any future adjudication should address any physical impairments that are supported by the updated record—including Morgan F.'s previous testimony—as deemed appropriate according to the relevant legal standards.

Morgan F. also raises an issue that challenges the ALJ's subjective symptom evaluation. She contends the ALJ improperly equated her ability to perform activities of daily living with the ability to perform full-time work and ignored certain qualifications with her ability to perform those activities of daily living, including that she received assistance from her roommate with the care of her young children. (*See* [Filing No. 9 at 22-23](#).) However, Morgan F. does not engage the relevant legal standard noted above that the Court must accord the ALJ's credibility determination considerable deference, overturning it only if it is patently wrong. Morgan F. also does not engage the other justifications that the ALJ provided for his adverse subjective symptom evaluation, including evidence of symptom control with medication and Morgan F.'s failure to seek the level of regular treatment expected based on her alleged symptoms. (*See* [Filing No. 7-2 at 19](#).) Morgan F.'s subjective symptoms should be reevaluated along with further consideration of her mental RFC.

In the interest of providing guidance on remand, the Court provides notice of relevant decisional authority that may bear on any future evaluation of Morgan F.'s subjective symptoms.

Mental impairments that are treatable and under control are not a basis for disability. *See Prochaska*, 454 F.3d at 737. "It is true that 'infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment.'" *Beardsley*, 758 F.3d at 840 (quoting *Craft*, 539 F.3d at 679) (additional citations omitted). "But the ALJ may not draw any inferences 'about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.'" *Beardsley*, 758 F.3d at 840 (quoting *Craft*, 539 F.3d at 679) (additional citations omitted). An ALJ must also consider the fact that the ability to provide childcare in the home allows for a degree of flexibility that is not akin to work in the competitive workforce, including the ability to take breaks and get assistance from others. *See Gentle v. Barnhart*, 430 F.3d 865, 867-78 (7th Cir. 2015). For example, Morgan F. testified that she got "sidetracked a lot" with childcare but got help from a friend that she lived with—who did not work—and that Morgan F. was previously living with her husband. ([Filing No. 7-2 at 50](Filing No. 7-2 at 50).) Any future evaluation of Morgan F.'s subjective symptoms should take into consideration the above decisional authorities, as well as relevant guidance from the SSA.

## V. CONCLUSION

For the reasons stated above, the final decision of the Acting Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 4/29/2019

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Jean Marie Godfrey
SOCIAL SECURITY ADMINISTRATION
jean.m.godfrey@ssa.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov